Good morning. My name is Vicki Buchanan. I'm here on behalf of Trayvon Mitchell. I'll reserve a couple of minutes. Mr. Mitchell's 283-month sentence in this case is far greater than necessary to meet the purpose of sentencing the sentencing of sentencing. The sentence is improper under the guidance of Gaul, under the two factors in Gaul. First, it is factually erroneous as to the enhancements in the sentencing guidelines. The first one was whether or not Mr. Mitchell was an organizer and leader of the March robbery. There is no evidence, none, that he was an organizer and leader of that particular robbery. He showed up briefly on the day of the robbery and operated the police scanners. Are we limited? Does it matter whether he was a leader of each individual robbery? I believe it does, because that's how you get to the multiple count. They go through each. The sentencing guidelines deal with each count individually, and then they come to the multiples. So if you were going to go ahead and attribute the second robbery to the first robbery, there would be no point in having to have the multiple enhancement for multiple different robberies. So my understanding of the sentencing guidelines is that they go through and they calculate the particular enhancements based on the facts of each particular crime as though that was the only conviction. And then when the two are compared, one is then they decide whether it's one to four points below, five to nine points below, or whatever, in terms of adding to the larger crime. So that's at least my understanding of how it works. So given that, I would think that each one would be dealt with separately. My impression is different based on the introductory comment to the guidelines which make reference to the determination of a defendant's role in the offense as to be made on the basis of all conduct within the scope of Section 1B1.3 relevant conduct, i.e., all conduct included under that section, and not solely on the basis of elements and acts cited in the count of conviction. So I don't know that they're limited to the one particular conviction or element offense that's cited in the count of conviction, or for that matter, even to the ones for which he was convicted because there were other robberies attributed to this group of people. I agree with the as to the second, to your comment that other robberies attributed in terms of making other factual findings. However, I don't see how you can attribute the conduct from a second robbery to a first robbery to say that he was an organizer or leader. He may well have evolved into that when it became to the second one, but I don't see how that that would be relevant to the first particular robbery, the Downing robbery. Here you're referring to the second one as being the second count of conviction? Yeah, the second conviction in October on Crenshaw. Crenshaw, that was it. Yeah. But there were other robberies that were attributed to this group, including the defendant. Can't those be considered? There were. And I've had a hard time finding anything in the record that deals with it other than the PSR mentions it briefly, a prior robbery or an attempted robbery. I thought there was one that was testified to at some length where people were in the bushes, something about the bushes. I thought the – well, I thought that was the Crenshaw, but maybe I'm getting it confused. The Crenshaw was very confusing because they tried to – they tried that robbery over a period of three or four different attempts. Does he have to be the CEO to be a leader organizer? No, he does not. But he has to have – So he could be the vice president in charge of police scanners and still be a leader organizer? Yes, if he has – you know, if he has control over the situation and he's – Is that true? I thought he really did have to be a manager of other people, not just in charge of police scanners. Well, there would be the manager, which is a second level down from the organizer. But he has to have more involvement than just showing up to operate the scanners. I mean, that's all he did on the first robbery. And that's really – in the second robbery, he did transport people back and forth to the house. But he – his job didn't function on the second robbery. Gave some signals about when to enter the vein? Sure. I mean, that's what the – that's what the person with the police scanner does is – Provided a car? I don't know. And he didn't provide a car on the first robbery. He may have taken people on the second robbery. So essentially you're not arguing about the second robbery. You're arguing about the first robbery. Only arguing. And if we agree with you about the first robbery, then the question is, does that matter, which I'm still not sure about, because I don't know why he doesn't get an enhancement either for the overall situation or for the second robbery, which is sufficient to kick it up. He does get an overall because of – because then if you – depending on how you add up the total enhancements because of the multiple crimes enhancement. So if he gets an overall, then what difference does it make? That's the point I'm not getting. Well, if he doesn't have – if you don't give it to him on the first one, if you don't give the downing robbery, he doesn't get the four points for the role. For that robbery. But he gets it for the other robbery. So what's the difference? Well, then you don't – then you don't add the – it doesn't get added to the multiple counts if it's nine points or less. I see. It doesn't get added to the multiple counts, which would therefore take – it would not add three extra points to the multiple counts. So that would take him to a much lower level, sentencing level. Are you saying he wouldn't have two counts with the enhancement? He'd only have one count with the enhancement? Is that why? There would be three points added for the – for the multiple count enhancement. And my reading is that you would not add the three points to the second robbery if the first robbery was nine points less than the second robbery. The point is that the judge in this case did not make those findings. The judge in this case basically found that he was the organizer because he was the smartest of the group and also because he, quote, instructed others. But what the court is relying on was the government's brief. It wasn't – he says he's referring to the transcript, but in fact he's referring to the characterization in the government's brief. The second issue is, of course, the gun enhancement, which the jury found there was no gun enhancement. Now, that's not binding because it was a mistrial, but it is instructive. There's also no evidence that Mr. Mitchell used the gun in this – knew about the gun in this particular case. Which robbery are we talking about for that one? This is Downing. I'm basically focusing on Downing. The March one? The March one. Because for the October one he did, for sure. For sure, yes. For sure. He was there when they gave the gun to the people and the instructions to the people in the second robbery. He was not there when they picked up the gun or when it was transferred to Austin. And what did the judge say about that? The judge basically said that, how are you going to have a robbery without a gun? Basically, you know, you've got to be kidding me. It's a great equalizer. There's, you know, you don't do this without a gun. So he did what the court in this court in Zelaya said. And he said that at the first sentencing or at the second sentencing? Both, but the time when he said the great equalizer was the second sentencing. And the first sentencing he said, you know, you can't, are you kidding me, you can't just, you have to, you know, there has to be some reason to get these ATM people to open up their ATM machine, and how are they going to do it if I just, you know, ask, giving them a piece of paper? So he's basically assuming that you've got to have a gun for any of these type of robberies, and that's improper, an improper assumption. To have the enhancement, do you have to actually have a gun as opposed to threatened to have a gun? For the enhancements, you just have to know about the gun. Or it has to be an actual gun. Or it has to have basis. Sotomayor, opposed to a toy gun or a threatened gun or something like that. Right. I believe it has to be an actual gun, but it has to, and it doesn't have to be brandished, but you have to have the knowledge that it was there. And Judge Paez, who sentenced a different defendant, Austin, found that there was no gun, that he didn't know about the gun in that particular case. I don't know that that's relevant. It might be relevant in terms of the fact that Austin got such a small sentence and my client got such a large sentence. But I think the most troubling part of this case is the second factor of the Gall case, which is the factors that are taken into account to determine whether the sentence is reasonable. And in this particular case, the judge focused on some factors and didn't focus on others. In fact, if you look at the, as I was reading through the sentencing memorandum, the judge spends most of his time focusing on just punishment. This guy is dangerous. This is the most horrible crime I've ever seen. He needs to be punished. He needs to be severely punished, which I disagree with. The judge has a lot more experience than I do. But he spends an awful lot of time on the punishment and says, I want to keep him there long enough so he gets, essentially so he gets old because he won't be nearly as aggressive if he's old. But then he spends very little time on the other issues in this case, which is the disparity of the sentences and the rehabilitation. The judge. You're down to about a minute. Okay. Do you want to save some? No. I would rather just get this. Okay. That's fine. It's your time. The rehabilitation in this case, the judge assumes that Mr. Mitchell lied, is lying to him in court, and that Mr. Mitchell is lying. He did give him a year on the rehabilitation, though. He gave him a year out of 25 years. A year. And Mr. Mitchell was sentenced to three times as much as the next defendant in this case. And his conduct certainly was not three times as bad as anyone, especially when he did, what he did was run the police scanners and was not involved in any of the physical assaults. Thank you. Okay. You have about half a minute. Okay. For rebuttal. Thank you. We'll hear from the government at this time. Mr. Middleton. Thank you.  appearing on behalf of Appellee United States of America. What's the answer to whether it matters? Let's suppose that we thought that the March enhancement wasn't valid. Does it matter? Well, I think defense counsel is correct in the fact that it matters because what the court has to do to determine a sentence in this particular case is that it has to calculate the offense level for each particular robbery. And so if you don't add that enhancement to the March 6th robbery, then that offense level automatically becomes four levels less. In the overall scheme of things, if you were to take away just that particular enhancement, then I think based on the calculations in the pre-6 report, the offense level for that particular bank robbery would go from 31 to 27. And so the overall or the final offense level when you combine the two crimes would go from 33 to 32. Okay. So that's the difference between bank one, bank one level. Okay. So it does matter, but in the overall scheme of things, it doesn't make a significant difference. And the judge did sentence within the guidelines, so it makes a difference. That's correct. All right. So then why – how is he a leader of the March robbery on this record? I've read the record. I don't see that he did anything but run the police scanner. Well, Your Honor, I think if you look at the record, that's not correct. I did look at the record at some point. That's not correct. And I think the question before this Court is whether the district court clearly erred in applying that particular enhancement. All right. Well, why didn't it? There are a number of different things that the Court can look at in determining whether this particular enhancement applies. First of all, the guidelines suggest that you can look at the number of participants in the crime. Obviously, in this particular case, there were at least five participants. But the whole – as I read the record, he – at least as to the guy who was there who testified, Trey Mitchell showed up late, was not the person who contacted him, was not the person who was calling the shots, and was a participant. Well, again, Your Honor, what the guidelines suggest is that when you look at each participant, you look at the degree of planning that – or the level of planning they had. Well, I just didn't. I told you what my reading of the record is. And why is it wrong? Well, in this particular case, he was involved in the planning. He may have showed up late, but he showed up at the house where they were discussing how the robbery would take place. Right. But they can't all be the leaders. He had to be the leader, not just – Well, that's correct. And I think when you determine whether they're all leaders, as the Court has previously pointed out, at that point you can look at the entire record and relevant conduct. And I think what you see at that particular point is that whereas in this particular case he may have showed up at one meeting, when you look at the other bank robberies, what you see is a certain level of consistency. You see certain individuals who show up at the meetings and who give directions and instructions, and you see another group of individuals who are the people who receive those instructions and those directions and who actually go into the banks. Let me see if I understand your argument. Does it mean that if there is absolutely no evidence that he was a leader or organizer of the March robbery, it would be perfectly permissible for the district judge to have taken evidence from the other robberies as indicia that he was, in fact, a leader organizer of the March robbery? Well, Your Honor, I think if the – Can you start with a yes or no? I think the answer is no, only because the Court said if there's absolutely no evidence. Okay. You tell us what the best evidence there is that he was a leader organizer of the March robbery. Well, the best evidence, Your Honor, is that he showed up at the house, he brought the instrumentalities of the bank robbery. But we know what he didn't do. He did not recruit the people to be in it. He did not recruit the people to be in it. He did not give directions to the people who were in it. It's not that there's no evidence that he did. There's evidence that he didn't, because we know who did. Well, I would disagree that he didn't give directions. I think one of the parts of – part of the conversation at the bank – I'm sorry, at the house was that he told the two bank robbers that this is going to be easy and all you have to do is go in there and do what you're supposed to do. So I think when he's telling them what to do – and one of the things that you see in this record is you never see these individuals who are going into the bank instructing any of these other individuals who are staying outside of the bank, like Sloan and Cleveland Rose, who are leaders consistently throughout this conspiracy. You never see directions coming the other way. But in this particular case, Trayvon Mitchell, the defendant, is telling these individuals all you have to do is go into the bank and do what you're supposed to do. He's giving them a pep talk, basically. He's basically giving them a pep talk, but it's not really – I mean, telling them that they have to do what they're supposed to do is not exactly directing them what to do at all. Well, I think when you look at the overall context and what he did in the other bank robberies – and again, the Court can look at the other bank robberies to place what he did in this particular case in context. One of the other bank robberies was a 404B evidence where, again, he met at the house. He went to the scene, but he didn't go into – he didn't jump into the bushes like the other people who were going to go into the robberies did. When that robbery failed, it was he who asked one of the robbers for their contact information. It was he who told them that I will contact you later. And in fact, when you go from there to... But that was all later, right? It was later, not earlier. It was, but again... So his role could have changed. What about if we thought that that was not – that this was not sufficient? We have an alternative sentence from the judge, but it also assumes the answer to the gun enhancement, right? That's correct. So do you want to talk about that? Well, I do, Your Honor, but before I go on to that, if I could just make one point. So the fact that this other robbery was later on the issue of leadership doesn't make a difference. Well, it makes some difference. I mean, it would be more logical to infer from something that happened before than from something that happened after. Except that if we're talking about relevant conduct, if the court is trying to determine based on what this individual did in the overall scheme, what his conduct in this particular case meant, then I think he can look at the other bank robberies. And, again, when you go to the October 7th robbery, what you see is it's the defendant who actually calls one of the bank robbers, who actually goes out and picks him up, and who brings him back to the meeting place. But you're not arguing, as I understand it, that you can base the leadership determination on relevant conduct. You can only infer from relevant conduct to this particular robbery, but it has to be a leadership in this robbery. Is that right? I think that's correct in order to add the enhancement. But what I'm saying is when the court looks at this and he says, well, he was a leader in this particular case, and he was a leader in this particular robbery, and in this particular robbery, he may have had less of a role, but he did essentially the same thing, then I think based on that, placing it in context, he can say, yes, he did essentially the same thing, or the other robbers did essentially the same thing, his role was the same. So I think it's very appropriate. And what about the gun enhancement? Oh, the gun enhancement, two things. The defense would like to suggest that what the court did violated Zelaya. In other words, that the court simply said because there was a robbery, you have to assume, or it's reasonably foreseeable, that there was a gun involved. That's not what the court did. The court made its inference based on the particular nature of these robberies. But didn't he refer it backwards again? I mean, wasn't he confused because he was inferring from October to March rather than from March to October? Actually, Your Honor, I don't think that's correct. I think the government may have been confused and may in fact have confused this Court because I think in the government's brief, it argues that the defendant conceives that he was aware of a gun when in fact the defendant was actually referring to the October robbery. But the district court and the government at the time of the sentencing was very clear in arguing that the defendant was aware of a gun in a prior robbery. Now, the record isn't clear. What prior robbery? What evidence is there of that? Well, there are two, at least two prior robberies. There's one that's discussed at some length, but we never find out when that was, do we? That's correct. Okay. It's not clear when that one was. There was at least one other robbery, count three of the indictment, where there was a robbery. It was an armed bank robbery. It did occur prior to the bank robbery of March 6th. It occurred in late 1995. And it's not clear from the record what the testimony was with respect to, when I say it's not clear on the record, certainly not clear to the record before this Court based on the excerpts that the Court had. But it is clear that one of the witnesses from that robbery or one of the defendants from that robbery did testify during the course of the trial. And so it's clear that the Court could have been referring to that particular prior robbery, and that was a robbery where the jury hung, so it didn't reach a verdict. But it was a prior robbery. And, again, the district court was very clear in saying it was a prior robbery. Was Mitchell at that robbery? I'm sorry. Do we know that Mitchell was at that robbery? Yes. And he was charged with that particular robbery. And do we know that there was a gun at that robbery? I'm sorry, Your Honor. Do we know there was a gun at that robbery? Again, it's not – I'm not clear on what the facts was other than the fact that it was a prior robbery. Well, that's not going to help. So what robbery – what robbery was there before the March robbery at which there was a gun? Again, that would have been a count three of the indictment, which was in late 1995. It involved – But you said you didn't know if there was a gun there. No. There was clearly a gun there. It was charged as an armed bank robbery. The record isn't clear as to what the defendant's knowledge was. But, again, when we look at what the district court said, if the court is asking whether there was a prior robbery where there was a gun, there clearly was. No. I'm asking trial went to – so what is the specific evidence other than that there are guns in bank robberies? Well, Your Honor, if I could – because of my time, it's like it's just a robbery. First of all, did the judge actually say something to the effect of you always have a gun in a bank robbery? No, he didn't say that. What he said was in this particular type of robbery, which is an ATM takeover type robbery, it's inconceivable that you could go into a bank – But that was the October one, not the March one. The March one wasn't that kind of a robbery, right? It was. They were all ATM takeover robberies. What does that mean? They were done in two different ways. What did she just ask? What does that mean, ATM takeover? Well, they went into the banks and basically they told the individuals in the bank that we want to get into the ATM. Oh, ATM takeover. I see. That's correct. So it wasn't just going into a bank, showing a note, and asking for money. They actually forced the employees at the bank to open the ATM and give them the money. I see. So it wasn't that they were taking over the bank. It said they were taking over the ATM. That's what takeover means. That's correct, Your Honor. Okay. So it's not just a bank robbery and therefore a gun. It's this particular style of bank robbery, which you can't do without some show of force, and therefore is reasonably foreseeable. The last point I would want to make, Your Honor, is this particular robbery was charged as an armed bank robbery. The way it was tried was that the defendant didn't go into the bank, but there was a gun used, and the jury found him guilty of armed bank robbery beyond a reasonable doubt. So inherent in that finding is that it was reasonably foreseeable that this defendant would use ñ knew that there would be a gun used. I think we understand your argument. You're over your time. I am. Thanks for coming in today. And thank you, Your Honor. We appreciate it. We'll give you a minute. Okay. Very quickly, I believe that, you know, Judge Keller, in making his alternative sentence, I believe that he, deep down, may have acknowledged perhaps, given the other sentences in this case, that that was indeed a more fair and equitable sentence and one that would meet the purposes of sentencing in this case. And finally, Mr. Middleton may have gotten confused, but the jury hung on the 924 enhancement on the first robbery. Thank you. Okay. Thank you. The case just argued will be submitted for decision.
judges: Hawkins, Berzon, Clifton